UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRENDA KAY HAWK, ) | CASE NO. 4:11CV196 |
| ) | |
| Plaintiff, ) | MAGISTRATE JUDGE |
| v. ) | GEORGE J. LIMBERT |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | **MEMORANDUM OPINION & ORDER** |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

Brenda Kay Hawk ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1.  For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS this case for reevaluation and further analysis of Plaintiff's fibromyalgia, the opinions of her treating physician and her credibility.

I. **PROCEDURAL AND FACTUAL HISTORY**

On November 20, 2007, Plaintiff filed applications for DIB and SSI, alleging disability beginning August 1, 2006 due to fibromyalgia, hypothyroidism, attention deficit hyperactivity disorder ("ADHD") and anxiety disorder not otherwise specified. ECF Dkt. #12 at 69.[1] The SSA denied Plaintiff's applications initially and upon reconsideration. *Id*. at 123-141. Plaintiff filed a request for an administrative hearing and on November 2, 2009, an Administrative Law Judge ("ALJ") conducted the hearing. *Id.* at 86, 144-147. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). *Id.* at 86. On November 25, 2009, the ALJ issued a decision denying benefits. ECF Dkt. #12 at 81. Plaintiff filed a request for review of the decision, but the Appeals Council denied the request. *Id*. at 57-62.

---

[1] Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

On January 27, 2011, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On September 23, 2011, Plaintiff filed a brief on the merits. ECF Dkt. #18. On November 28, 2011, Defendant filed a brief on the merits. ECF Dkt. #20. On January 13, 2012, Plaintiff filed a reply brief. ECF Dkt. #24.

**II.     SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

In his decision, the ALJ determined that Plaintiff suffered from fibromyalgia, hypothyroidism, ADHD, and anxiety disorder not otherwise specified, which qualified as severe impairments under 20 C.F.R. §404.1571 *et seq*. and 20 C.F.R. § 416.971 *et seq*. ECF Dkt. #12 at 69. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 69-70. He discounted Plaintiff's allegations of pain and limitations and concluded that she had the residual functional capacity ("RFC") to perform light work that required her to stand and walk for up to four hours per eight-hour workday, with no climbing of ladders, ropes, or scaffolds, no crawling, only occasional climbing of ramps and stairs, and occasional balancing, kneeling, stooping and crouching. *Id*. at 71. The ALJ further limited Plaintiff to work which had no concentrated exposure to hazards such as dangerous machinery or unprotected heights, or excessive cold or dampness. *Id*. He also found that Plaintiff could perform work involving no more than simple, unskilled tasks with one to three step instructions not involving detailed or complex tasks, only occasional interaction with the public of a simple, superficial nature, and no fast production rates. *Id.* Based upon this RFC and the testimony of the VE, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy, including those of a photographic machine operator, folding machine operator, bench work assembler or printed products or type copy examiner. *Id.* at 80.

**III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI benefits. These steps are:

1.     An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R.

>   §§ 404.1520(b) and 416.920(b) (1992));
>
> 2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));
>
> 3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where

-3-

the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

**V.     ANALYSIS**

    **A.     FIBROMYALGIA**

Plaintiff asserts that the ALJ erred in evaluating the evidence with regard to her fibromyalgia. ECF Dkt. #18 at 464. Plaintiff contends that the ALJ incorrectly assessed her fibromyalgia as he relied upon a lack of objective medical evidence in formulating his determination, rejecting portions of her treating physician's opinion and discrediting her credibility. This Court agrees.

The Court initially notes that fibromyalgia cases present challenging issues as to determining credibility, RFC and disability in the social security context because the symptoms are entirely subjective. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 3 (6th Cir.2007). Fibromyalgia is a condition that "causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances." *Preston v. Sec'y of Health and Human Servs.*, 854 F.2d 815, 817–820 (6th Cir.1988). "A person with a condition of fibromyalgia certainly could have serious enough pain to have a disability under the Social Security Act, but the condition does not automatically qualify as a listing level impairment." *Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 527 (6th Cir.2003). Unlike other medical conditions, fibromyalgia is not amenable to objective diagnosis and standard clinical tests are "not highly relevant" in diagnosing or assessing fibromyalgia or its severity. *Preston*, 854 F.2d at 820, *see also Rogers*, 486 F.3d at 243–44 ("in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant"). Those who suffer from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers*, 486 F.3d at 244 (quoting *Preston*, 854 F.2d at 820).

In the instant case, the ALJ found that Plaintiff's fibromyalgia was a severe impairment at Step Two of the sequential analysis. ECF Dkt. #12 at 69. However, throughout his decision, the

-4-

ALJ repeatedly refers to a lack of objective medical evidence and physical findings as well as Plaintiff's ability to perform minimal activities to discount the opinion of Plaintiff's treating physician's opinion and to discount Plaintiff's credibility.

### 1. TREATING PHYSICIAN'S ASSESSMENT

Dr. Sial, Plaintiff's treating physician, completed a physical capacity evaluation form on September 23, 2009 and opined that Plaintiff could sit and stand/walk up to four hours per eight-hour workday, occasionally lift eleven to twenty pounds, perform repetitive hand and foot movements, and frequently bend, squat, and crawl, but never climb. ECF Dkt. #12 at 394-395. Dr. Sial further opined that Plaintiff would not be able to function in spite of her medical condition on a daily basis eight hours per day without rest breaks that exceeded those usually provided in the workplace, which were fifteen minutes in the morning and afternoon, and thirty minutes for lunch. *Id.* at 395. He also opined that on fifteen days or more per month, Plaintiff would likely experience problems related to her conditions which would cause her to be unable to complete the workday or would cause her to miss work. *Id.* The form requested that Dr. Sial note his clinical findings and comment on how Plaintiff's medical conditions would affect her ability to be employed in a daily, eight-hour day work setting. *Id.* at 396. Dr. Sial wrote "anxious, poor focus" in this section. *Id.*

An ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers*, 486 F.3d at 243. Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the

following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

"When a treating physician...submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not entitled to any particular weight." *Turner v. Comm'r of Soc. Sec.*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20 C.F.R. §416.927(e)(1). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id*. (internal quotation and citation omitted). Moreover, it is the ALJ who ultimately determines a claimant's RFC. *See* 20 C.F.R. 404.1546(c), 416.946(c) ("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician").

The ALJ discussed Dr. Sial's physical capacity evaluation and accepted his limitations as to Plaintiff's standing and walking abilities and the limited abilities to bend and squat. Compare ECF Dkt. #12 at 71 with ECF Dkt. #12 at 395. However, in rejecting the rest of Dr. Sial's RFC, the

ALJ found that these limitations were not "supported by the preponderant weight of the evidence," and that there were "few physical findings to support the claimant's subjective complaints and that the claimant's allegations are overstated, as are the examiner's comments regarding anxiety and poor focus as a basis for such limitations." *Id*. at 73.  He also found that "the objective medical signs and findings" failed to support Dr. Sial's opinions as to Plaintiff's inability to function without more than customary rest breaks and his opinion that Plaintiff would miss or be unable to complete a workday fifteen or more days per month.  *Id*. at 77, 78.  The ALJ concluded that "the objective evidence" indicated that Plaintiff could perform the RFC that he determined.  *Id.*

As explained above, fibromyalgia is not confirmed by objective testing or abnormal clinical findings like joint swelling, abnormal muscle strength or neurological reactions.  *Rogers*, 486 F.3d at 244.  Moreover, in *Swain v. Commissioner of Social Security*, 297 F.Supp.2d 986 (N.D. Ohio 2003), the Court held that "[s]ince the presence and severity of fibromyalgia cannot be confirmed by diagnostic testing, the physician's opinion must necessarily depend upon an assessment of the patient's subjective complaints." Accordingly, rejecting part of Dr. Sial's opinion because objective medical evidence was lacking, few physical findings were made and because it was based upon Plaintiff's subjective complaints constitutes error.

Defendant attempts to justify the ALJ's rejection of part of Dr. Sial's opinion by asserting that the ALJ relied on inconsistencies between Dr. Sial's two opinions about how many days Plaintiff would miss work or be unable to work due to her condition.  ECF Dkt. #20 at 488.  Dr. Sial had completed a physical capacity evaluation form as well as a mental status questionnaire concerning Plaintiff's conditions on the same date of September 23, 2009.  ECF Dkt. #12 at 73-74.  On the mental status questionnaire, Dr. Sial opined that Plaintiff would have marked concentration, persistence and pace difficulties in task completion.  *Id*. at 393.  He wrote "uncertain" in response to the question of whether Plaintiff could perform daily, eight-hour per day work on a continued basis and he indicated that he did not know how many days Plaintiff would miss due to the exacerbation of *psychologically-based symptoms*.  *Id*.(emphasis added).  On the *physical capacity* evaluation part of the form, Dr. Sial indicated that Plaintiff would miss or be unable to complete fifteen or more days per month due to her condition and would need more breaks than those

-7-

regularly scheduled. *Id.* at 395.

The Court rejects Defendant's assertion because it is a post-hoc rationalization. The ALJ made no reference whatsoever as to inconsistencies between Dr. Sial's assessment based upon Plaintiff's physical conditions and her mental conditions. This Court must rely upon the actual analysis in an ALJ's opinion and not post-hoc arguments made by Defendant. *See Fleischer v. Astrue*, 774 F.Supp.2d 875, 882 (N.D. Ohio 2011). Moreover, even if this post-hoc rationale were considered, it lacks merit. The facts that Dr. Sial completed both forms on the same day and one specified psychologically-based symptoms and the other physical limitations of a condition negates Defendant's assertion of inconsistency.

The ALJ also appeared to reject portions of Dr. Sial's assessment because the ALJ discounted Plaintiff's credibility. As discussed below, the ALJ's credibility finding is also flawed. Accordingly, the Court finds that the ALJ's rejection of important portions of Dr. Sial's opinion are not supported by substantial evidence and the case must be remanded for reevaluation and further analysis of this opinion.

### 2. **CREDIBILITY DETERMINATION**

An ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence. *Walter,* 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir.2001), quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir.1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers,* 486 F.3d at 249.

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to

produce such disabling pain. *See id.; Stanley v. Sec'y of Health and Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Sec'y of Health and Human Servs*. 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility as to pain should accord great deference to that determination. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir.1993). Nevertheless, an ALJ's assessment of a claimant's credibility as to pain must be supported by substantial evidence. *Walters*, 127 F.3d at 531.

The analysis set forth in Social Security Ruling 96-7p is particularly relevant where a claimant has been diagnosed with fibromyalgia. "Opinions that focus solely upon objective evidence are not particularly relevant" due to the "the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia." *Rogers*, 486 F.3d at 245. Cases involving fibromyalgia "place[ ] a premium . . . on the assessment of the claimant's credibility." *Swain*, 297

-9-

F.Supp.2d at 990. This is because "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243. "Nonetheless, a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits ...." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir.2008) (emphasis in original). Accordingly, in cases involving fibromyalgia an ALJ must assess Plaintiff's credibility and "decide ... if the claimant's pain is so severe as to impose limitations rendering her disabled." *Swain*, 297 F.Supp.2d at 990.

In discounting Plaintiff's credibility, the ALJ found that Dr. Sial's " reference to an extreme number of absences appears to be based on the claimant's mental condition as well as her physical condition and also appears to accept the claimant's allegations, which the undersigned has found to be somewhat magnified." ECF Dkt. #12 at 77-78. In determining that Plaintiff's allegations were "somewhat magnified," the Court finds that some of the facts relied upon by the ALJ were proper. For instance, the ALJ first noted that while Plaintiff told her doctors that she had symptoms for twenty years, she was nevertheless able to work for some time. ECF Dkt. #12 at 77. However, Plaintiff had reported a worsening of her symptoms over time. Dr. Spahija, a neurologist, examined Plaintiff at her prior treating physician's request and noted that Plaintiff reported to him that her symptoms had been progressing over many years. *Id*. at 295. Nevertheless, this was a proper factor for the ALJ to discuss in conjunction with Plaintiff's credibility.

The ALJ also noted that Plaintiff denied physical therapy and referral to a specialist at the time of Dr. Spahija's diagnosis. ECF Dkt. #12 at 77. Plaintiff had indeed declined Dr. Spahija's recommendation for physical therapy. *Id*. at 296. She did testify at the ALJ hearing that her options for obtaining some types of therapy and for specialist treatment were limited due to her lack of medical insurance. *Id*. at 53. She did accept a prescription sample from Dr. Spahija for her fatigue, but declined medications for her depression and pain. *Id.* This was an acceptable factor for the ALJ to consider in evaluating Plaintiff's credibility.

However, the majority of the facts relied upon by the ALJ in assessing Plaintiff's credibility in light of her fibromyalgia pain and limitations are improper. First and foremost is the ALJ's finding that "[a] neurological evaluation by Dr. Spahija in 2005 revealed no physical

-10-

abnormalities." ECF Dkt. #12 at 77. Again, fibromyalgia does not reveal itself through physical abnormalities or neurological deficits. *Rogers*, 486 F.3d at 243. Moreover, based upon his expertise as a neurologist, Dr. Spahija nevertheless diagnosed Plaintiff with fibromyalgia. *Id.* at 296.

The ALJ also found that "despite the claimant's complaints of persistent fatigue, she reported to Dr. Ahmed that she ate only peanut butter and did not eat vegetables or meat" and the ALJ noted that Plaintiff reported to a counselor that "she binged on sugar." ECF Dkt. #12 at 77. The ALJ apparently implies that if Plaintiff ate better, her fatigue would decrease. While this statement may be true, it is also true that fatigue is a hallmark symptom of fibromyalgia. *Swain*, 297 F.Supp.2d at 990, citing *Preston*, 854 F.2d at 817 and *Sarchet v. Chater,* 78 F.3d 305, 306-307 (7th Cir. 1996). Dr. Ahmed, the doctor to whom Plaintiff reported her diet, advised Plaintiff to change her eating habits, but also prescribed Cymbalta, a medication approved by the U.S. Food and Drug Administration for the treatment of fibromyalgia. *Id.* 404, 406; *see also* http://www.fda.gov/forconsumers/consumerupdates/ucm107802.htm.

The ALJ also stated that "[e]ssentially records from 2007 and 2008, show a lot of complaints but little else. The same appears true for 2009, with some reference to tender points in May 2009 consistent with her diagnosis." ECF Dkt. #12 at 77. However, these are the findings associated with fibromyalgia. Diagnosing fibromyalgia involves testing a series of focal points for tenderness and ruling out other possible conditions. *Rogers*, 486 F.3d at 244. The Sixth Circuit has recognized that "disability claims related to fibromyalgia are related to the symptoms associated with the condition – including complaints of pain, stiffness, fatigue, and inability to concentrate– rather than the underlying condition itself." *Rogers*, 486 F.2d at 247, citing 20 C.F.R. § 419.929; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992)(subjective complaints of pain may support a disability claim). Further, "given the nature of fibromyalgia, where subjective complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Rogers*, 486 F.2d at 248.

The ALJ in the instant case also relies upon another source that the Court finds problematic in the context of a fibromyalgia impairment based upon *Rogers*: "minimal daily functions." The ALJ found that Plaintiff's daily living activities supported a finding that she could perform limited light

-11-

work because she testified that she could perform household chores like cleaning her trailer and doing her own laundry. ECF Dkt. #12 at 77. He also noted that Plaintiff did her own shopping. These are the same types of activities the *Rogers* Court found "not comparable to typical work activities." *Rogers*, 486 F.3d at 248; *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir.1967) ("[t]he fact that [a claimant] can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this [claimant] possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by [claimant].")

The ALJ also cited to Plaintiff's report to Dr. Sial that she could attend to her daily living activities without significant dysfunction. However, it appears that this report appears related to Plaintiff's ADHD and not to her fibromyalgia. Dr. Sial's May 20, 2009 progress note indicated that Plaintiff presented for follow-up of her ADHD and fibromyalgia and reported that Adderall had significantly resolved her problems of sustaining attention and tasks of regular daily activities, organization, memory deficit, fidgeting and impatience. *Id*. at 401. Plaintiff nevertheless reported that she had a general feeling of fatigue and feeling as if her arms and legs were heavy, and she had multiple pain points over her body. *Id*. Also on July 17, 2009, Dr. Sial noted that Plaintiff was feeling well on Adderall and she reported that, "her concentration is good, she is able to perform crossword puzzles, read the newspaper and attend to activities of daily living without any significant dysfunction." *Id.* at 399.

The ALJ also indicated that Plaintiff reported the ability to care for her cats and Dr. Sial had recommended low-impact activities such as biking, swimming or water aerobics for Plaintiff, which he asserted showed that "she is able to do such activities." ECF Dkt. #12 at 78. While this is true, it does not establish that Plaintiff is capable of working five days a week, eight hours per day. Moreover, the fact that Dr. Sial recommended such activities did not alter his opinion as to the work-related limitations that he placed on Plaintiff's abilities due to her physical condition.

Upon review of the ALJ's decision and based upon *Rogers* and its progeny, the Court finds that the ALJ in this case erred in relying upon a lack of objective medical evidence and Plaintiff's minimal daily living activities in order to reject portions of Dr. Sial's assessment and to discount

Plaintiff's credibility. Accordingly, the Court finds that this case must be remanded in order for the ALJ to reconsider, further develop, and articulate the weight given to the opinions of Plaintiff's treating physician, and to reevaluate and analyze Plaintiff's RFC and her credibility.

The Court recognizes that it is the ALJ who ultimately determines a claimant's RFC and the ALJ is not bound to find Plaintiff's allegations credible. However, the ALJ must apply the proper procedural standards in making such decisions. "Some people may have a severe case of fibromyalgia as to be totally disabled from working but most do not, and the question is whether claimant is one of the minority." *Vance,* 260 Fed. App'x at 806, citing *Sarchet,* 78 F.3d at 306-307. Here, the Court makes no determination as to the ultimate issue of disability, but finds that the ALJ misapplied the regulations and lacked substantial evidence for some of his findings. Accordingly, remand is appropriate.

## VI.  CONCLUSION

For the foregoing reasons, the Court VACATES the ALJ's decision and REMANDS this case for reevaluation, and further analysis and articulation as to Dr. Sial's opinion, Plaintiff's RFC and Plaintiff's credibility relating to her fibromyalgia.

DATE: July 25, 2012                              */s/George J. Limbert*
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE